UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANNA SHKURATOVA, <br><br> Plaintiff <br><br> v. <br><br> THE LINKS AT MARTHA'S VINEYARD, INC. <br> FARM NECK ASSOCIATION, INC., <br> PASCAL BITOUN and <br> TIMOTHY D. SWEET, <br><br> Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) C. A. No. 1:17-CV-10388-GAO <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION
FOR SUMMARY JUDGMENT ON FEDERAL CLAIMS**

INTRODUCTION

This action involves federal and state law wage claims brought by Anna Shkuratova ("Plaintiff") arising out of her employment from April to September 2016 as a line cook in the Café at Farm Neck, a restaurant owned and operated by the Defendant, The Links At Martha's Vineyard, Inc. ("Employer" or "Defendant-Employer") at the Farm Neck golf and tennis facility located in Oak Bluffs, Massachusetts, on the Island of Martha's Vineyard. The Plaintiff alleges that she should have been paid overtime for her work in excess of 40 hours per workweek pursuant to federal and state law; that she was paid less than minimum wage under federal and state law; that she was not paid for all her work hours; and that she has additional state law claims for breach of contract and unjust enrichment. The Defendants assert in defense that they were exempt from paying

1

overtime under the Fair Labor Standards Act as an "amusement or recreational establishment that operated on a seasonal basis," (29 U.S.C. § 213(a)(3)); that they paid the Plaintiff more than the applicable minimum wage for her work; that the Plaintiff did not work "off the clock" for the Defendants; and that they also have various other defenses to the state law claims, including that restaurant workers are exempt from state overtime requirements.

Plaintiff filed a Motion for Preliminary Certification, which the Defendants have opposed, and it is pending before this Court. Plaintiff has tried to convince other current or former workers of the Defendant-Employer to join, but she has so far secured only three additional potential plaintiffs. The Defendants now move for summary judgment on all the federal claims contained in the First Count of the Amended Complaint, reserving moving similarly on all state law claims contained in the Second, Third and Fourth Counts should the Court continue to exercise its supplemental jurisdiction over them after ruling on this motion.

**FACTUAL BACKGROUND**

Defendant The Links At Martha's Vineyard, Inc. is the corporate owner and operator of the Farm Neck Golf Club in Oak Bluffs on Martha's Vineyard. The club consists of tennis and golf facilities and a restaurant called The Café at Farm Neck. The club opens in mid-April each year (although tennis does not open until May 1 each year), but each of its composite parts closes at different times: tennis closes on November 1; the restaurant closes on the Sunday after Thanksgiving; and the golf course closes on December 24. The club has members, who pay their dues in three installments during the open season, and it is also open to the public. It generates its revenues from its dues, fees from its tennis and golf operations, and payments for the food it serves in its restaurant.

The club's six highest revenue months each year are April, May, June, July, August and September. Its six lowest revenue months each year are January, February, March, October, November and December.

Defendant Timothy D. Sweet is the general manager of the club. He has general oversight and management responsibilities for the club's operations. He has been the general manager for approximately thirty-eight years. Defendant Pascal Bitoun has been the Café manager for approximately two years. He manages the wait staff and the bartender, along with having several administrative responsibilities for the entire restaurant. The chef manages the back of the house, consisting of the cooking staff and the dishwasher, with some assistance and oversight from Mr. Bitoun.

The Plaintiff worked as a line cook in the Café at Farm Neck from May 9, 2016 to September 17, 2016. She received $15.00 per hour from May 9 to June 26, 2016, and then $16.00 per hour from June 27 to September 17, 2016. She was responsible for punching in at the start of her workday and for punching out at the end of her work. She kept her own record of the hours she worked by writing down her hours. She later compared her record of her hours with the Defendant-Employer's records, and she found no discrepancy in the amount of the hours between the two records. On several occasions, the Plaintiff worked more than forty hours in a week. The Defendant-Employer paid her only her straight time hourly rate.

## ARGUMENT

### I.   Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of establishing that no genuine issues of material fact remain. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Summary judgment is to be granted "where there is no material fact in dispute, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *SCA Services, Inc. v. Transportation Ins. Co.*, 419 Mass. 528, 531 (1995). "'A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party.'" *Rodriguez-Rivera v. Federico Trilla Reg'l Hosp.*, 532 F.3d 28, 30 (1st Cir. 2008) (quoting *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008)). "A fact is material if it has the potential of determining the outcome of the litigation." *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2005). "'[A]s to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party.'" *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (quoting *Century 21 Balfour Real Estate v. Menna*, 16 F.3d 7, 9 (1st Cir. 1994)).

## II. The Defendants Are Entitled to Summary Judgment in Their Favor on The First Count of The Amended Complaint

The Plaintiff has asserted three theories justifying her recovery under the FLSA against the Defendants: (1) failing to pay her the statutorily-mandated minimum wage; (2) failing to pay her for all hours she worked by forcing her to work "off-the-clock"; and (3) failing to pay her time-and-one-half for her overtime hours worked. These theories all fail. The Plaintiff received no less than $15.00 for each hour that she worked for the Defendant-Employer, which was well more than the statutorily-mandated $7.25 per hour

in the FLSA and the $9.00 per hour in Massachusetts. The Plaintiff did not work "off-the-clock" for the Defendant-Employer; she admitted in her deposition that she compared her own time records with those of the Defendant-Employer and found no discrepancies. Her overtime claim fails because the Defendant-Employer is exempt from the overtime requirements of the FLSA under § 213 (a)(3) as a seasonal recreational or amusement establishment.

### A. The Defendants Are Entitled to Judgment in Their Favor on The Minimum Wage Claim Because They Paid the Plaintiff More Than the Minimum Wage During Her Employment at The Farm Neck Golf Club.

In the First Count of her Amended Complaint, the Plaintiff claims that the Defendants failed to pay her the minimum wage required by the FLSA. At the time of the Plaintiff's employment with the club, the FLSA mandated a minimum of $7.25 per hour (29 U.S.C.S. §206, effective July 24, 2009), while Massachusetts law required a minimum of $9.00 per hour (G.L. c. 151, §1, effective January 1, 2016). The Plaintiff admitted during her deposition that she started work at the club at $15.00 per hour, and that she later received a one-dollar-an-hour raise to $16.00 per hour. (A.Shkuratova depo., p.25-26, p.28, Ex. #2). Her pay stubs show that the club paid her $15.00 an hour from May 9 to June 26, and $16.00 from June 27 to September 17 of 2016. (A.Shkuratova depo., p.28, Ex. #2). These amounts are all more than the required minimum wages. The Plaintiff can show no violation by the Defendants of the FLSA minimum wage provisions. The Court should grant judgment to the Defendants on the minimum wage claim made by the Plaintiff.

### B. The Defendants Are Entitled to Judgment in Their Favor on the "Off-The-Clock" Claim Because the Plaintiff Did Not Work "Off-The-Clock" For the Defendants.

Also in the First Count of her Amended Complaint, the Plaintiff claims that the Defendants forced her to work "off-the-clock" so that they would not have to pay her for all her work hours. During her deposition, the Plaintiff identified her pay stubs from her employment at the club. (A.Shkuratova depo., p.28, Ex. #2). She testified that she had to punch in when she started her workday and punch out when she ended her work. (A.Shkuratova depo., p.27-28). Additionally, Ms. Shkuratova kept her own hours by writing them down on a pad. (A.Shkuratova depo., p.29). She later compared her noted hours with the club's recorded hours, and she found no discrepancies in the number of hours. (A.Shkuratova depo., p.30-31). She testified that she is not now making any "off-the-clock" claim. (A.Shkuratova depo., p.44). The Court should grant summary judgment to the Defendants on the "off-the-clock" claim made by the Plaintiff to the extent that she continues to pursue it here.

**C.    The Defendants Are Entitled to Judgment in Their Favor on The Overtime Wage Claim Because They Are Exempt from Paying Overtime Under the Fair Labor Standards Act as an "Amusement or Recreational Establishment That Operated on A Seasonal Basis." (29 U.S.C. § 213(a)(3)).**

Finally, in the First Count of her Amended Complaint, the Plaintiff claims that the Defendants failed to pay her overtime rates, as required by the FLSA. The club was exempt under § 213 (a)(3) from the FLSA overtime provisions because it was an amusement or recreational establishment that operated on a seasonal basis.

Generally, the Fair Labor Standards Act (FLSA), at 29 U.S.C.S. § 207(a), requires employers to pay employees at least one and one-half times their regular rate of pay for all hours worked more than forty hours per week as overtime compensation. However, as the Supreme Court noted in *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142 (2012), the overtime compensation requirement does not apply with respect to all

6

employees, referencing 29 U.S.C.S. § 213. 567 U.S. at 147. Even so, the employer bears the burden of proving the application of the exemption to its business establishment. *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 394 n.11 (1960). But, as the Court recently noted, the exemption requires a fair reading, not a narrow construction. *Encino Motorcars, LLC v. Navarro*, 584 U.S. ___, 138 S.CT. 1134, 1142 (2018). While 29 U.S.C.S. § 213(a) lists 30 types of jobs that are exempt, the portion relevant to the present case is the following:

> § 213. Exemptions
> Minimum wage and maximum hour requirements. The provisions of sections 6 (except section 6(d) in the case of paragraph (1) of this subsection) and 7 [29 USCS §§ 206, 207] shall not apply with respect to—
> (3) any employee employed by an establishment which is an amusement or recreational establishment, organized camp, or religious or non-profit educational conference center, if (A) it does not operate for more than seven months in any calendar year, or (B) during the preceding calendar year, its average receipts for any six months of such year were not more than 33 1/3 per centum of its average receipts for the other six months of such year, …;

29 U.S.C.S. § 213(a)(3).

Thus, under Section 213(a)(3), the FLSA specifically exempts any individual employed by an amusement or recreational establishment that operates on a seasonal basis. The Section 213 (a)(3) exemption applies to an "establishment." The issue whether an entity is exempt from the overtime provision of the Act is one of law and statutory interpretation, and it is determined on the nature of the employer's business, not on the nature of the employee's work. *Brennan v. Keyser*, 507 F.2d 472, 476 (9th Cir. 1974). Section 213 (a)(3) is intended to establish criteria for seasonality and makes it plain that employees of seasonable amusement or recreational companies generally are exempt. *Marshall v. New Hampshire Jockey Club, Inc.*, 562 F.2d 1323, 1329 (1st Cir. 1977).

"Amusement or recreational establishments" are defined as establishments frequented by the public for its amusement or recreation. 29 C.F.R. § 779.385. According to the Department of Labor Field Operations Manual, among the establishments that typically qualify for exemption as a seasonal amusement or recreational establishment are:

- •Golf courses;
- •Amusement parks;
- •Ice skating rinks;
- •Racetracks; and
- •Concessionaires at public beaches or amusement parks.

Field Operations Handbook §§ 25j10–11 (1994), available at http://www.dol.gov/whd/FOH/FOH_Ch25.pdf.

Courts have consistently applied the § 213 (a)(3) exemption to golf and similar business operations. *See Hays v. City of Pauls Valley*, 74 F.3d 1002, 1006 (10th Cir. 1996) (golf course constituted exempt recreational establishment); *Shultz v. Hasam Realty Corp.*, 316 F.Supp. 1136, 1143-44 (1970) (hotel corporation that encompassed hotels, motels, restaurants, and golf and tennis clubs that accepted local members were all part of single establishment and was exempt under FLSA). In *Brock v. Louvers & Dampers, Inc.*, 817 F.2d 1255 (6th Cir. 1987), the Sixth Circuit Court of Appeals extended the exemption to a private, nonprofit golf club. In doing so, the court noted the exemption's congressional legislative history:

> The purpose of the seasonal amusement or recreational establishment exemption was not clearly spelled out in the legislative history of either

8

> the 1961 or 1966 amendments. However, there is some useful legislative history discussing a proposed 1965 amendment to the FLSA. The House Committee Report stated that the amusement and recreational establishment exemption would cover 'such seasonal recreational or amusement activities as amusement parks, carnivals, circuses, sport events, parimutuel racing, sport boating or fishing, or other similar or related activities. . . .' H.R.Rep. No. 871, 89th Cong., 1st Sess. 35(1965). Although the proposed amendment was not passed, the legislative history is relevant because the following year Congress enacted a similar amendment including the amusement and recreational exemption. See *Brennan v. Texas City Dike & Marina, Inc.*, 492 F.2d 1115, 1118 n. 8(5th Cir.), cert. denied, 419 U.S. 896, 95 S.Ct. 175, 42 L.Ed.2d 140(1974).

817 F.3d at 1258. The rationale behind this exemption is that the type of employment covered "may require longer hours in a shorter season, their economic status may make higher wages impractical, or they may offer non-monetary rewards." *Id.* at 1259.

The Defendant-Employer operates the Farm Neck Golf & Tennis complex in Oak Bluffs, Massachusetts, generally from approximately April to November. The eighteen-hole golf course is open to the public as well as to the club's membership. The tennis complex is also available to the public and to its membership. *See Brock v. Louver and Dampers, Inc.*, 817 F2d at 1258 (seasonality is crucial question for exemption, not whether business is free or fee-based to public, private or combination of the two). Noted for being frequented by sitting and former Presidents, dignitaries and media celebrities, Farm Neck is the largest, and most well-known, golf course on the tourist-oriented island of Martha's Vineyard. It also offers instruction in both golf and tennis, hosts numerous charitable tournaments, wedding receptions, corporate functions, and is the home course of the Martha's Vineyard Regional High School golf team. The course hosts thousands of rounds of play every year, the bulk of which come in the tourist season, beginning Memorial Day weekend and running through Labor Day weekend. The premises cover

approximately 265 acres and include a golf course, tennis complex and the restaurant at which the Plaintiff worked, The Café at Farm Neck.

The Café at Farm Neck, in addition to providing food and beverage service to the recreational visitors to Farm Neck, is a full-service restaurant located on the same premises as the golf and tennis facilities, and it is an integral part of the Farm Neck operation. It is open for breakfast, lunch and dinner only during the seasonal operation of the club facilities. Patrons include both club members and the general public.

Courts have had no difficulty finding that sales or supportive service operations that are co-located with exempt amusement or recreational operations are part of the same establishment, and their employees qualify for the Section 213 (a)(3) exemption. One of the related services or facilities that courts have recognized to be covered by the 213 (a)(3) exemption include restaurants operated in conjunction with seasonal recreational businesses. The size or income of the restaurant is not a factor. For example, the Tenth Circuit declined to require an enterprise to derive a certain percentage of revenue from strictly recreational activities to be considered recreational for the exemption to the Fair Labor Standards Act, preferring to examine the totality of the circumstances, such as the establishment's primary purpose; the activities and services, such as restaurants and shops, that it offered incidental to its recreational facilities; its relationship to land set aside for recreational use; and its revenue sources. *Chessin v. Keystone Resort Mgmt., Inc.*, 184 F.3d 1188, 1193-94 (10th Cir. 1999). *See Hamilton v. Tulsa County Pub. Facilities Auth.*, 85 F.3d 494, 497-98 (10th Cir. 1996) (public fairground authority responsible for the establishment, provision, maintenance, and promotion of fairground facilities used by other entities for recreation centers,

agricultural and industrial expositions, fairs, trade shows and other recreational activities entitled to judgment in its favor on exemption under § 213(a)(3)); *Chaney v. Clark County Agric. Soc'y*, 90 Ohio App. 3d 421, 426-27, 629 N.E.2d 513, 517 (1993) (employer rented its fairground to businesses that were not exempt from the requirements of the Act but that did not affect its status as an exempt employer under § 213(a)(3).

The next step requires determining whether the Defendants qualify for the exemption under either statutory test. Traditionally, courts have concluded "[t]he Department of Labor regulations are entitled to judicial deference and are the primary source of guidance for determining the scope of exemptions to the FLSA." *Clements v. Serco, Inc.*, 530 F.3d 1224, 1227 (10th Cir. 2008) (quoting *Ackerman v. Coca-Cola Enters.*, 179 F.3d 1260, 1264 (10th Cir. 1999)). The statute authorizes the Secretary of Labor to prescribe necessary rules, regulations, and orders regarding the amendments to the FLSA. *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 165 (2007). Indeed, the Department of Labor ("DOL") has promulgated detailed regulations outlining the criteria and procedures for the application of the FLSA exemptions. 29 C.F.R. §§ 541.100 et seq. Additionally, the DOL's Field Operations Handbook § 25j01 (c) (1994), available at http://www.dol.gov/whd/FOH/FOH_Ch25.pdf, explains how to apply the § 213 exemptions. The relevant provision is:

> **(c) (B) 33 1/3 percent test**
> 1. (1) An amusement or recreational establishment, organized camp, or religious or non- profit educational conference center will be exempt if "during the preceding calendar year, its average receipts for any six months of such year were not more than 33 1/3 per centum of its average receipts for the other six months of such year." Since the language of the statute refers to receipts for any 6 months (not necessarily consecutive months), the monthly average based on total receipts for the 6 individual months in which the receipts were smallest should be tested against the monthly average for six

> individual months when the receipts were largest to determine whether this test is met.

DOL Field Operations Handbook §25j01(c). Therefore, the calculations for determining eligibility for the exemption under the second criterion of Section 213(a)(3) comes from the earnings of the prior calendar year, as specified in the legislation.

Turning to the exemption calculation next, in 2015 the Defendant-Employer had the highest receipts for the entire operation in the months of April, May, June, July, August and September. (T.Sweet Affidavit, Ex. #2). The total receipts for those months was $5,979,081.31, providing an average of $996,513.55 for those months. Conversely, the lowest six months of January, February, March, October, November and December produced total receipts of $456,753.59, or $76,125.60 as a monthly receipt average. Dividing the lowest average by the highest average produces a ratio showing that the lowest six months were only 7.6% of the highest six months. This is well below the 33.33% threshold, which qualifies Farm Neck Golf Club for the overtime exemption under § 213(a)(3) at the time of the Plaintiff's employment. Although not relevant to the Defendant-Employer's exemption in 2016, similar qualifying percentages apply to both the year before (2015) and the year after (2017). In 2014, the Defendant-Employer had its high six-month receipts of $4,460,361.00 and its low six-month receipts of $361,762.00. The averages of $743,393.50 and $60,293.67 produce a ratio of 8.1%, qualifying it for the overtime exemption in 2015. In 2016, the high six-month total was $5,091,876.77, for an average of $848,646.13; the low six-month total was $415,227.46, for an average of $69,204.58. The ratio was 8.2%, meaning the Defendant-Employer again qualified for the exemption in 2017. Nonetheless, these and other years do not come into play in the relevant calculation for the exemption, as it focuses solely on

receipts for the calendar year immediately prior to the one during which an individual employee worked. There is also no need to pro-rate the club's dues over the full year even though it collects them only in certain months. *See Hays v. City of Pauls Valley*, 74 F.3d 1002, 1006 (10th Cir. 1996) (although plaintiff argued that golf course dues should be pro-rated over the full year, nothing in statute or regulations requires pro-ration).

The Defendant-Employer qualifies for the exemption in 2016, regardless of whether the Court applies the average receipts test to the entire golf/tennis/restaurant enterprise or to the Café alone. *See Hill v. Delaware North Companies Sportservice, Inc.*, 838 F.3d 281, 289 (2d Cir. 2016) (independent concessionaire must have contractual arrangement with host to operate on host's premises to sell goods to host's customers for them to use or consume on the premises during the host's amusement or recreational activities). Considering the Café separately, in calendar 2015 it had average receipts of $12,277.85 for its lowest six months[1] and an average of $192,792.88 for its highest six months, meaning that the lowest six months were only 6.4% of the highest six months, again well below the 33.33% threshold under § 213(a)(3). Breaking out the Café's receipts from the total enterprise receipts does not alter the outcome; the Defendant-Employer is exempt from the overtime provisions of the FLSA.

### D. Defendant Pascal Bitoun Is Not an Employer Under the FLSA so the Court Should Grant Him Summary Judgment on the Issue of His Personal Liability.

In her First Count, the Plaintiff also seeks to hold the individual defendants, Timothy D. Sweet and Pascal Bitoun, personally responsible for her overtime pay claims.

---

[1] The lowest six months for Café receipts—January, February, March, April, November and December—were different from the lowest six months for the entire operation. While April was a high receipt month for the entire operation, it trailed October by a wide margin in Café receipts in 2015.

13

In some instances, the FLSA imposes personal liability upon individuals who perform management functions for a corporate employer—"any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). A broad interpretation of this language could include Defendant Pascal Bitoun because, as the Café manager, he had some control over the Plaintiff's employment. The test for personal liability for FLSA violations requires that a Court look to the "economic reality" rather than to strict agency principles. *Goldberg v. Whitaker*, 366 U.S. 28, 33 (1961). The Court of Appeals for the First Circuit has distilled this test to focus on the "role played by the [individual defendant] in causing the [corporate employer] to undercompensate [its] employees and to prefer the payment of other obligations" or to retain profits. *Baystate Alternative Staffing, Inc. v. Herman*, 163 F.3d 668, 677-78 (1st Cir. 1998); *see Donovan v. Agnew*, 712 F.2d 1509, 1514 (1st Cir. 1983) (individuals with significant ownership interest who had operational control of corporation's day to day functions, including employee compensation, and who made decision to continue operations despite financial adversity while undercompensating employees were liable for unpaid wages as employers under FLSA). This refinement addressed the Court's concern that the definition would otherwise ensnare every individual who exercised supervisory control over employees. *Chao v. Hotel Oasis, Inc.*, 493 F.3d 26, 34 (1st Cir. 2007). The Court identified some factors bearing on an individual's personal liability: the individual's ownership interest in the employer organization; the individual's degree of control over the organization's finances and employee compensation; and the individual's role in causing any FLSA violation. *Id.* at 34.

In the instant case, the record indicates that Defendant Bitoun did not have any ownership interest in the golf club. He also did not have overall control of the day-to-day operations of the golf club; he merely supervised the day-to-day operations of the front side of the Café. The Chef oversaw the kitchen operations day to day. Mr. Bitoun did not hire the Plaintiff; the Chef chose the Plaintiff. Mr. Bitoun did not set the golf club's policy on overtime compensation for the kitchen workers; Mr. Sweet did that, and Mr. Bitoun followed it. Mr. Bitoun did not set the work hours for the kitchen staff; the Chef set the Plaintiff's hours. Mr. Bitoun did not control the golf club's finances.

While Defendant Bitoun was a link in the Plaintiff's chain of command, he was not the driving force behind any deficiency in her compensation. Under the test laid out by the First Circuit for personal liability for FLSA violations in *Donovan v. Agnew* and *Baystate Alternative Staffing, Inc. v. Herman,* this Court should find that there is no personal liability for Defendant Bitoun to the Plaintiff for any FLSA violations in this case. It should grant him summary judgment on all federal claims.

### E. Reliance by the Defendants on the Prior Department of Labor Audits Insulates Them from Liability to the Plaintiff for Overtime Wages.

In addition to their claim of exemption under the FLSA, the Defendants assert that they are not liable in this case because they relied upon the pronouncements of the DOL in determining not to pay overtime. The Defendants acted in good faith and relied on the results of multiple DOL audits and its Fact Sheet #18 (revised July 2008) (online at https://www.dol.gov/whd/regs/compliance/whdfs18.pdf) in not paying the Plaintiff overtime for work in excess of 40 hours in a workweek. *See Marshall v. Emersons Ltd.*, 598 F.2d 1346, 1347 (4th Cir. 1979) (Administrator's opinion letter on legality of tip back plan was pronouncement upon which employer could rely in good faith). 29 U.S.C.S. §

15

259(a) provides that in any action or proceeding based on any act or omission on or after May 14, 1947, no employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay minimum wages or overtime compensation under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act, if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the agency of the United States specified in § 259(b), which in the case of the FLSA is the Administrator of the Wage and Hour Division of the Department of Labor, or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged. An employer that acts in good faith conformity with, and reliance on, Labor Department regulations under the FLSA in not paying time-and-a-half for overtime hours is not liable to the employee for overtime wages. *Electronic Data Systems Corp. v. Kinder*, 360 F.Supp. 1044, 1051 (N.D. Tex. 1973), *affirmed*, 497 F.2d 222 (5th Cir. 1974). In a collective action seeking overtime compensation, the district court granted summary judgment to the employer, ruling that the employer was entitled to assert this good faith defense based upon its reliance on an Opinion Letter of the Administrator dated September 8, 2006. *Henry v. Quicken Loans, Inc.*, 2009 WL 3270768, pp. 13-14 (E.D. Mich. 2009), *affirmed*, 698 F.3d 897 (6th Cir. 2012). Such a defense, if established, shall be a bar to the action or proceeding, notwithstanding that after such act or omission, such administrative regulation, order, ruling, approval, interpretation, practice, or enforcement policy is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect. The design of the defense protects employers from liability, if the

employer took certain actions based upon an interpretation of law made by a government agency, even if the agency's interpretation was later ruled incorrect. *EEOC v. Home Ins. Co.*, 672 F.2d 252, 263 (2d Cir. 1982).

In this case, Defendant Timothy Sweet, the General Manager of the Defendant-Employer, had several contacts with auditors from the U.S. Department of Labor's Wage and Hour Division, including just two years before the Plaintiff came to work at Farm Neck Golf Club. Each of those audits resulted in a finding of exemption for the golf club under Section 213(a)(3), and the auditors made Mr. Sweet aware of Fact Sheet #18, upon which Mr. Sweet relied to set the company's policy on overtime wages. Defendant Bitoun subsequently relied upon that policy in accepting that Farm Neck Golf Club was exempt from overtime wage requirements under the FLSA for the workers at the Café. The Court should grant summary judgment to all the Defendants under this good faith reliance defense to this action under federal law.

### III. If the Court Resolves the First Count Federal Claims in Favor of the Defendants, the Court Should Use Its Discretion to Dismiss the Remaining State Law Claims in the Second, Third and Fourth Counts.

The Court should grant summary judgment to the Defendants on all the federal claims, which would leave only state law claims. In that instance, where the Court has disposed of all claims over which it has original jurisdiction, it should decline to exercise supplemental jurisdiction over the remaining state law claims. 28 U.S.C. §1367 (c) (3); *Carnegie-Melon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *Eves v. LePage*, 842 F.3d 133, 146 (1st Cir. 2016); *Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995). In some instances, such as where the state court can better address the substantial state law issue, such as the state-law exemptions and state-law administrative non-

compliance asserted here by these Defendants, it can be an abuse of discretion to retain jurisdiction over the state law claims. *Wilber v. Curtis*, 872 F.3d 15, 23 (1st Cir. 2017). The Court should decline to hold onto those claims here.

## CONCLUSION

For all the above-stated reasons, the Court should grant summary judgment to the Defendants on all federal claims contained in the First Count of the Amended Complaint, and it should choose not to exercise its supplemental jurisdiction over the remaining state law claims contained in the Second, Third and Fourth Counts of the Amended Complaint.

THE DEFENDANTS,
The Links at Martha's Vineyard, Inc., Pascal Bitoun and Timothy Sweet
By their attorneys

/s/ Austin M. Joyce
Austin M. Joyce, Esq.
Reardon, Joyce & Akerson, P.C
4 Lancaster Terrace
Worcester, MA 01609
508-754-7285
BBO# 255040
ajoyce@rja-law.com

/s/ John M. Collins, Esq.
Collins & Associates
47 Memorial Drive
Shrewsbury, MA 01545-4028
508-523-9731
BBO# 092580
jackmcopa@aol.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing Defendants' Memorandum Of Law In Support Of Their Motion For Summary Judgment On Federal Claims, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on May 4, 2018.

/s/ Austin M. Joyce
Austin M. Joyce